Steve W. Berman (*pro hac vice*)
Robert F. Lopez (*pro hac vice*)
Abigail D. Pershing (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com
robl@hbsslaw.com
abigailp@hbsslaw.com

Ben M. Harrington (SBN 313877)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
benh@hbsslaw.com

*Attorneys for Plaintiffs Société du Figaro, SAS;*
*L'Équipe 24/24 SAS; le GESTE; and the*
*Proposed Classes*

Cynthia E. Richman (*pro hac vice*)
Victoria C. Granda (pro hac vice)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone: 202.955.8500
Facsimile: 202.467.0539
crichman@gibsondunn.com
vgranda@gibsondunn.com

Daniel G. Swanson (SBN 116556)
Dana Lynn Craig (SBN 251865)
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: 213.229.7000
Facsimile: 213.229.7520
dswanson@gibsondunn.com
dcraig@gibsondunn.com

Caeli A. Higney (SBN 268644)
Eli M. Lazarus (SBN 284082)
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street
San Francisco, CA 94105
Telephone: 415.393.8200
Facsimile: 415.393.8306
chigney@gibsondunn.com
elazarus@gibsondunn.com

*Attorneys for Defendant Apple Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| SOCIÉTÉ DU FIGARO, SAS, a French simplified joint-stock company; L'ÉQUIPE 24/24 SAS, a French simplified joint-stock company, on behalf of themselves and all others similarly situated; and LE GESTE, a French association, on behalf of itself, its members, and all others similarly situated,<br><br>        Plaintiffs,<br><br>   v.<br><br>APPLE INC., a California corporation,<br><br>        Defendant. | No. 4:22-cv-04437-YGR<br><br>JOINT CASE MANAGEMENT STATEMENT<br><br>Hon. Yvonne Gonzalez Rogers |

Pursuant to the Standing Order for All Judges of the Northern District of California and Civil Local Rule 16-9, Plaintiffs Société du Figaro, SAS (Figaro); L'Équipe 24/24 SAS (L'Équipe); and Le GESTE (GESTE) (collectively, Plaintiffs) and Apple Inc. (Apple) (collectively, the Parties) respectfully submit this Joint Case Management Statement.

## I.      JURISDICTION & SERVICE

Plaintiffs contend that this Court has subject matter jurisdiction over Plaintiffs' claims pursuant to Sections 4 and 15 of the Clayton Act, 15 U.S.C. § 15 and 15 U.S.C. § 26, respectively. Additionally, they contend that the Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1332, 28 U.S.C. § 1337, and 28 U.S.C. § 1367. Apple has been served with Plaintiffs' Complaint; no parties remain to be served. Plaintiffs have begun to evaluate Apple's Motion to Dismiss, which they received on October 28, 2022.

Apple has argued in its Motion to Dismiss that the Court lacks subject matter jurisdiction over aspects of Plaintiffs' case. Specifically, the Court lacks subject matter jurisdiction over any claims brought by GESTE, any claims challenging Apple's "App Tracking Transparency" functionality, and any claims challenging a commission rate lower than 30%.

## II.      FACTS

### A.      Plaintiffs' statement

#### 1.      Procedural summary

Plaintiffs filed their proposed class action suit in this judicial district on August 1, 2022. (ECF No. 1.) The Court related this matter to *In re Apple iPhone Antitrust Litigation*, N.D. Cal. No. 4:11-cv-6714-YGR (consumer case or *Pepper*); and to *Epic Games, Inc. v. Apple Inc.*, N.D. Cal. No. 4:20-cv-5640-YGR (*Epic Games* case), on September 2, 2022. (ECF No. 28.)

#### 2.      Substantive summary

Plaintiffs Figaro and L'Équipe are France-based iOS developers that distribute iOS apps and in-app products in or via Apple's exclusive App Store (or, in the case of in-app digital products, in apps acquired therefrom). Plaintiff GESTE is a France-based association representing developers, including iOS developers such as these.

1        Among other claims, Plaintiffs allege that Apple has acquired and maintained monopoly (or,

2   alternatively, monopsony) power as it relates to iOS app distribution and in-app payment, or IAP,

3   services. While Apple refers to Plaintiffs' market allegations below, notably, it does not challenge

4   them in its motion to dismiss. Market determinations are factually intensive; furthermore, Plaintiffs

5   have alleged (and will demonstrate) that here, a single-brand market is present, *or, in the alternative*,

6   that Apple willfully dominates even a multi-brand market to the point of monopolization. (*See*, *e.g.*,

7   Complaint (ECF No. 1), ¶ 92 and n.77, 205.)

8        Plaintiffs contend that Apple has overcharged developers for distribution and in-app purchase

9   (IAP) services (or underpaid them for their digital products). They also contend that its practices have

10  led to lost profits (including by way of overcharges or underpayments for their iOS digital products),

11  as well as decreased output and innovation, all to the detriment of competition.[1]

12       Plaintiffs also allege that Apple's exclusion of competition results in the App Store being

13  hopelessly overcrowded, such that end-users cannot find developers' digital products (which itself

14  diminishes output). And while in *Cameron* those plaintiffs were pleased to have negotiated a settlement

15  which included provisions addressing in-part search and results (the agreement speaks for itself); that

16  resolution was, of course, a compromise of those plaintiffs' claims. Also, the relief is to apply "for a

17  period of at least three (3) years following the Final Approval Order." (S. Berman Decl., *Cameron*

18  ECF No. 396-1, Ex A (*Cameron* Stipulation of Settlement), § 5.1.)

19       Further, Plaintiffs allege that Apple abuses its market power by mandating minimum and end-

20  in-€.X9 pricing for paid apps and in-app products. Indeed, after plaintiffs filed their complaint, Apple

21  mandated major end-user price increases, including in the French storefront, raising the minimum price

22  for paid products from €.99 to €1.19. ("Upcoming price and tax changes for apps and in-app

23  purchases," Sept. 19, 2022, available at: https://developer.apple.com/news/?id=e1b1hcmv (last

24  accessed Oct. 31, 2022).) This required price increase, and its effects on output, will be alleged in any

25  amended complaint.

26

27       [1] These and other characterizations are mere summaries. Plaintiffs' current allegations are set forth

28  in their Complaint.

JOINT CASE MANAGEMENT STATEMENT - 2
Case No.: 4:22-cv-04437-YGR

Plaintiffs, whose relevant contracts with Apple contain United States and California choices of law, allege violations of Section 2 of the Sherman Act under monopoly and attempted monopoly theories, as well as under alternative monopsony and attempted monopsony theories. They also allege violations of California's Unfair Competition Law and Cartwright Act. They ask that the Court certify a U.S. federal law class (or classes) and a proposed California-law class (or classes).

**B.    Apple's statement**

This case was filed over three years after plaintiffs' counsel filed an almost identical lawsuit in *Cameron, et al. v. Apple Inc.*, Case No. 4:19-cv-03074-YGR (N.D. Cal.). *Cameron* was a putative class action brought by U.S. iOS app developers, and the Court entered final judgement in that case pursuant to a settlement on July 15, 2022.[2] The allegations in this Complaint overlap almost entirely with those in *Cameron*. As in *Cameron*, Plaintiffs' monopolization claims here depend on Apple-only markets that have been considered and rejected by this Court and others.[3] *See, e.g., Reilly v. Apple Inc.*, 578 F. Supp. 3d 1098, 1107-09 (N.D. Cal. 2022); *Coronavirus Reporter v. Apple Inc.*, 2021 WL 5936910, at *8-13 (N.D. Cal. Nov. 30, 2021); *Epic Games, Inc. v. Apple Inc.*, 559 F. Supp. 3d 898, 1021-26 (N.D. Cal. 2021). Likewise, the Complaint's allegations of anticompetitive conduct largely mirror those in the related cases as well.

But as Apple has maintained in this Court and others, it is not a monopolist, and its App Store business model is demonstrably procompetitive. The App Store is a part of the iOS ecosystem and was designed from the ground up for the use, development, sale, and distribution of apps. It was, in many ways, the first platform of its kind, and Apple committed to making it a safe and trusted place for

---

[2] Plaintiffs make the same allegations as in *Cameron* about over-crowding and discoverability on the App Store. But structural commitments in the *Cameron* settlement, negotiated by the same plaintiffs' counsel as here, were designed to address precisely those allegations, among others, and to benefit "other developers," like plaintiffs here, outside the *Cameron* settlement class. Motion for Preliminary Approval of Class Action Settlement, *Cameron* Dkt. 396, at 20; *see also* Berman Decl., *Cameron* Dkt. 396-1, Ex A (*Cameron* Stipulation of Settlement), § 5.1 (including, e.g., commitments concerning App Store search and a transparency report with "objective data regarding search queries and results").

[3] Apple made clear in its Motion to Dismiss that Plaintiffs' market allegations are flawed. *See* Dkt. 41 at 11. That Apple did not address all the deficiencies in Plaintiffs' market allegations does not mean that Apple made any concessions relating to them.

customers to discover and download apps, and a great business opportunity for all developers. The App Store has exponentially expanded consumer choice, putting access to well over a million applications and services at consumers' fingertips. Security and seamless performance are at the core of Apple's iOS ecosystem, and Apple holds iOS apps to a high standard for privacy and content. In keeping with this commitment to consumer privacy, Apple has introduced its App Tracking Transparency ("ATT") functionality, expanding consumer choice to opt out of certain third-party tracking.

The primary difference between this action and *Cameron* is that this action purports to advance the interests of putative classes of *France-resident* iOS developers and seeks relief related to their transactions on *non-U.S.* Apple storefronts.[4] But those claims are, at least in large part, barred by the Foreign Trade Antitrust Improvement Act, 15 U.S.C. § 6a (FTAIA). The Complaint also briefly attacks as anticompetitive Apple's ATT feature. But neither of these deviations from *Cameron* suffices to give rise to a new, timely developer action that should proceed past the pleadings phase here.

### III.    LEGAL ISSUES

**A.    Plaintiffs' statement**

Among the legal issues raised by Plaintiffs' Complaint are:

Whether Apple has unlawfully achieved and maintained monopoly or, alternatively, monopsony, power in one or more relevant markets or sub-markets for iOS distribution and IAP services, or for retailing iOS applications and other digital products in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2, including unlawful tying pursuant to Section 2 of the Sherman Act, whether as a *per se* violation thereof or under the rule of reason or other applicable standard, such that Plaintiffs and the proposed classes are entitled to treble damages and injunctive relief as requested in their Complaint;

---

[4] With respect to le GESTE, Apple notes that Plaintiffs have not identified in their Complaint any members of its association.

Whether Apple has violated California's Unfair Competition Law and Cartwright Act with respect to the conduct alleged in Plaintiffs' Complaint, such that Plaintiffs and the proposed classes are entitled to restitution and injunctive relief as requested in their Complaint; and

Whether a class or classes should be certified pursuant to Fed. R. Civ. P. 23, including pursuant to sections (b)(1), (b)(2), and/or (b)(3).

Plaintiffs learned with certainty that Apple would raise FTAIA defenses in the current matter when Apple filed its motion to dismiss three days ago. Plaintiffs' view is that these defenses are fraught with factual issues, including as to their own and other France-based iOS developers' participation in the domestic U.S. market for the Apple services at issue. (*See, e.g.*, Complaint, ¶¶ 23-24, 225-35.)

**B.      Apple's statement**

It is Apple's position that, in addition to those listed by Plaintiffs above, central legal issues in dispute include all elements of claims under Sherman Act Section 2, Clayton Act Sections 4, 15, and 16, California's Cartwright Act, and California's Unfair Competition Law. Legal issues in the case also include (but are not limited to) the following: whether Plaintiffs' claims are barred, in whole or in part, by the Foreign Trade Antitrust Improvement Act, 15 U.S.C. § 6a (FTAIA); whether GESTE has Article III or statutory standing; whether Plaintiffs have defined legally cognizable markets; whether Plaintiffs can prove anticompetitive or exclusionary conduct by Apple under any recognized theory; whether Plaintiffs can prove a lack of legitimate business justification for Apple's conduct; whether Plaintiffs can prove that the alleged conduct has harmed competition; whether Plaintiffs suffered causal injury; whether Plaintiffs suffered antitrust injury and damages; whether Plaintiffs' claims are barred, in whole or in part, by the applicable statutes of limitations or laches; whether Plaintiffs may seek restitution; and whether any affirmative defenses apply.

In *Cameron*, Apple made known its position that claims based on "transactions . . . related to retail sales to end users in or via foreign storefronts for Apple's App Store" would be barred by the FTAIA: The July 28, 2020 Joint Case Management Conference Statement in *Cameron* discusses Apple's objection to any potential amendment to the claims there to encompass such transactions. *Cameron* Dkt. 99, at 2.

1

## IV.    MOTIONS

Per the local rules and the Court's previous relation orders, Plaintiffs filed an administrative motion to relate, which Apple did not oppose. The Court granted this motion on September 2, 2022. (ECF. No. 28.) The case was reassigned to this Court on September 6, 2022. (ECF No. 29.)

On September 9, 2022, the Parties filed a stipulated request to extend briefing on any motion to dismiss, so that any opposition would be due December 16, 2022, and any reply in support of a motion to dismiss would be due January 10, 2023. (ECF No. 31.) The request remains pending.

On October 28, 2022, Apple filed its Motion to Dismiss, (ECF No. 41), together with its Request for Judicial Notice (ECF No. 42). Apple anticipates moving to stay discovery in light of Plaintiffs' October 31, 2022 assertion that Apple would need to move for a protective order to delay discovery, *see infra*, at VIII.A.

At present, the Parties anticipate motions for summary judgment by each side. Also, Plaintiffs anticipate filing one or more motions for class certification. Plaintiffs also may file one or more motions to amend their complaint where such amendments are not allowed as a matter of right or by agreement among the Parties. Apple reserves its right to object to such amendments. The Parties reserve the right to bring any other future motions.

## V.    AMENDMENT OF PLEADINGS

**A.    Plaintiffs' statement**

As reflected in the proposed schedule attached as Exhibit A, Plaintiffs have reserved the right to amend their Complaint, including in response to a motion to dismiss or answer. They also reserve the right to seek to amend their Complaint, or any Amended Complaint, as facts, law, and circumstances warrant, in their discretion.

**B.    Apple's statement**

Apple reserves its right to oppose any attempt by Plaintiffs to seek to amend their Complaint, or any Amended Complaint, outside the agreed-upon 35-day period after October 28, 2022, when Apple served Plaintiffs with its Motion to Dismiss. To serve the interests of judicial efficiency and economy, Apple believes that the schedule should include a deadline 30-days after any ruling on the Motion to Dismiss for any further amendment of the complaint.

JOINT CASE MANAGEMENT STATEMENT - 6
Case No.: 4:22-cv-04437-YGR

## VI.   EVIDENCE PRESERVATION

The Parties confirm that they have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information and that they met and conferred pursuant to Fed. R. Civ. P. 26(f), including with respect to reasonable and proportionate steps taken to preserve evidence relevant to the issues reasonably evident in this action. Because this case has been related to *Pepper*, it is "bound by . . . the stipulation[] regarding ESI" entered as an order of the Court in *Pepper*. (*Pepper* ECF No. 194, ¶ 7.) However, the Parties are discussing whether any modifications to that ESI protocol would be appropriate in this case. The Parties agree that ESI should be a topic for continued discussion.

## VII.   DISCLOSURES

The Parties have agreed to stipulate to moving the deadline to exchange initial disclosures to no earlier than November 14, 2022.

### A.   Plaintiffs' statement

Per Fed. R. Civ. P. 26(a)(1)(C), the Parties' initial disclosures would already be due, except that the Parties have agreed that they should be due no earlier than November 14. Plaintiffs see no need to delay initial disclosures to a date beyond November 14, and they note that in *Cameron*, the parties agreed to exchange (and did exchange) initial disclosures, starting from scratch, a week after the first case management conference there, despite Apple's stated plan at the time to file a motion to dismiss. (*Cameron* ECF No. 54.) With respect to Apple's assertion below that Plaintiffs have made it clear they will amend their Complaint, Plaintiffs continue to analyze Apple's three-day-old motion to dismiss and have not yet determined whether they will file an amended complaint in response, or whether they will file an opposition brief.

As for the form of Apple's initial disclosures, whether it deems them "supplemental" or otherwise, Plaintiffs' view is that the disclosures must comport with the requirements of Rule 26(a)(1)(A) as they apply to this case.

### B.   Apple's statement

Because this matter is related to *Pepper*, under the Court's Order Granting Stipulation Regarding Coordination of Discovery (*Pepper* ECF No. 194, ¶¶ 6-7), Apple's initial disclosures in *Pepper* apply as Apple's initial disclosures here. Accordingly, only supplemental disclosures,

1   necessary and relevant to this matter, are required of Apple. It is Apple's position that the Parties'

2   exchange of initial disclosures (or, with respect to Apple, supplemental disclosures) should wait until

3   after the Court issues a ruling on Apple's Motion to Dismiss, or any future motion to dismiss an

4   amended complaint, if it rules that any claims may proceed. If the Court grants Plaintiffs leave to

5   further amend their complaint, then the exchange should follow the Court's order on any motion to

6   dismiss a further amended complaint. Apple notes that the parties in *Cameron* did not exchange initial

7   disclosures until after the *Cameron* plaintiffs amended their complaint (*Cameron* ECF No. 53).

8   Moreover, at that point in time, none of the discovery in these related App Store cases—including

9   *Pepper*—had commenced. Apple also notes that it did not file a motion to dismiss in *Cameron* after

10  the Court expressed a disinclination to consider issues in that case on the pleadings. Here, given that

11  Plaintiffs have made clear that they will amend their Complaint, there is no reason to commence

12  discovery at this point.

## VIII.   DISCOVERY

14          The Parties have conferred pursuant to Fed. R. Civ. P. 26(f), and they propose and report as

15  follows. The Parties expect their initial discovery plan to consist of a case schedule (including

16  discovery deadlines) (*see* Ex. A hereto) and a protective order. Plaintiffs have drafted a protective

17  order and sent it to Apple for its consideration. Because this case has been related to *Pepper*, it is

18  "bound by [*Pepper*'s] protocols governing the coordination of discovery, as well as the stipulations

19  regarding ESI and expert discovery" entered as orders of the Court in *Pepper*. (*Pepper* ECF No. 194,

20  ¶ 7.) However, the Parties are discussing whether any modifications to those orders would be

21  appropriate in this case. Each side reserves rights to move the Court to modify any of these orders if

22  modification is deemed necessary by a side and agreement cannot be reached.

23  **A.     Plaintiffs' statement as to the commencement of discovery**

24          Plaintiffs' view is that discovery should begin on November 7, 2022. Again, this is essentially

25  parallel to *Cameron*, where discovery commenced a week after the first CMC, notwithstanding that

26  Apple planned to file a motion to dismiss there. (*Cameron* ECF No. 54.) Furthermore, this comports

27  with Fed. R. Civ. P. 26(d), under which discovery could have begun earlier, following the Parties'

28  initial Rule 26(f) conference (though waiting a short period afforded time for Apple draft its motion to

1   dismiss and Plaintiffs to review it, which will help to inform initial discovery requests). If Apple wants

2   to delay discovery, including in light of its motion to dismiss, which raises factual issues in Plaintiffs'

3   view including as to its FTAIA defense, then respectfully, it should file a motion for protective order

4   at an appropriate time, so that the pertinent issues can be fully briefed. Otherwise, in Plaintiffs' view,

5   commencing discovery without delay will only lead to a more efficient litigation of this case. Plaintiffs

6   are willing to discuss this matter with Apple further in advance of the CMC scheduled for November

7   7; however, it makes the foregoing observations and comments in light of Rule 26 and the Parties'

8   apparent impasse.

9       Plaintiffs also note the ease with which Apple can re-produce or make available all discovery

10  produced in *Cameron*, including documents stored in what Plaintiffs assume to be an active *Pepper*

11  database. And Apple itself indicates that it is willing to make certain data available to Plaintiffs

12  immediately (though not transactional or other data pertaining to Plaintiffs and proposed class

13  members in the instant case), which underscores the ease of production here.

14      Finally, Plaintiffs note that Apple seeks to benefit from the coordination order entered in

15  *Cameron* and *Pepper*, while seemingly ignoring the provision indicating that discovery served in those

16  cases should be served on Plaintiffs now. (*Cameron* ECF No. 80 ("[F]uture responses to discovery

17  requests, and future discovery produced in response to such requests by parties and non-parties in any

18  of the Related App Store Actions shall be served on counsel for all parties in the Related App Store

19  Actions.").)

20  **B.    Apple's statement as to the commencement of discovery**

21      It is Apple's position that no discovery should proceed in this matter unless and until the Court

22  issues a ruling allowing Plaintiffs' claims to proceed in whole or part. If the Court grants Plaintiffs

23  leave to further amend their complaint, then discovery should not commence unless and until the Court

24  issues a ruling allowing Plaintiffs' amended claims to proceed in whole or part. As stated *supra*, at

25  VII.B, Plaintiffs' comparison to the *Cameron* proceedings is unpersuasive. Discovery in *Cameron* did

26  not commence until after the plaintiffs there filed their amended complaint. Plaintiffs here are not

27  similarly situated in this respect to the *Cameron* plaintiffs. Having waited until after *Cameron* settled

28

1  to bring their nearly identical claims, Plaintiffs should not be able to force the immediate

2  commencement of discovery before the Court tests the viability of those claims.

3       On October 31, 2022, Plaintiffs stated their position for the first time that Apple should move

4  for a protective order in order to delay discovery, rather than continue to confer over the

5  commencement of discovery. Accordingly, a motion to stay discovery by Apple will be forthcoming,

6  pending discussion of these issues at the Case Management Conference.

7  **C.**    **Discovery taken to-date**

8       No discovery has been conducted by either Plaintiffs or Apple to-date.

9  **D.**    **Scope of proposed anticipated discovery**

10      **1.**    **Plaintiffs' statement**

11       Plaintiffs intend to serve their first requests for production on the Defendant on November 7,

12  2022.

13       As part of discovery in this matter, Plaintiffs seek production of, or access to, all discovery

14  materials, first- and third-party and otherwise, which plaintiffs in *Cameron v. Apple Inc.* received, or

15  were allowed access to, or generated (for example, deposition transcripts). These items and data will

16  include materials made available to the *Cameron* plaintiffs pursuant to the discovery coordination

17  order entered in the *Cameron* and *Pepper* cases (which also applied in the *Epic Games* case). Plaintiffs

18  ask that these materials be promptly produced or otherwise made available to them in this matter. (*See*

19  Sec. VIII.E.1.a, *infra*.)

20       Plaintiffs also seek production of all material that may already have been produced to—or that

21  will be produced to—governmental agencies, regulators, or legislative bodies, domestic or foreign

22  (including but not limited to French and European Union/European Commission agencies) regarding

23  any contention that, or in any investigation regarding whether, Apple monopolizes (or monopsonizes)

24  a global or domestic (including U.S. or foreign-domestic) market or sub-market for iOS app

25  distribution and IAP services. They also seek materials produced to the Committee on the Judiciary of

26  the U.S. House of Representatives in response to its requests dated September 13, 2019 or otherwise

27  (to the extent not already covered by the reference to materials produced or otherwise made available

28  to plaintiffs in the *Cameron* matter).

1    Further, Plaintiffs seek discovery into market conditions, barriers to entry, Apple's app-

2   distribution and IAP commissions or fees, the efforts, expenses, and costs associated with operating

3   the App Store and any marketing efforts related thereto, any IP defenses raised by Apple, responses to

4   purported competition, and any purported business justifications for Apple's business model.

5   Additionally, they seek discovery into iOS developers', including their own, participation in the U.S.

6   domestic market for iOS distribution and IAP services, which entailed dealing with Apple Inc. in the

7   U.S., by way of the Internet and otherwise. As noted, Plaintiffs are evaluating Apple's recently filed

8   motion to dismiss, which raises Apple defenses. Plaintiffs seek discovery as to its FTAIA defense, as

9   well as other defenses—including its timeliness defenses, which are belied by applicable statutes of

10  limitation and the Parties' contracts, among other factors, and which fare no better under the equitable

11  doctrine of laches—and other matters raised in the motion, such as its ATT program.

12    Additionally, Plaintiffs seek discovery from Apple and appropriate third-parties regarding or

13  consisting of: relevant market/sub-market considerations; App Store-related profits and margins; apps

14  and related digital products sold in the App Store, including pricing and volume data; discoverability

15  in the App Store of apps and related digital products; output issues; pertinent technical, hardware, and

16  software considerations, including as they pertain to enforcement of Apple's lock on iOS distribution

17  and IAP services; pertinent contracts, policies, and practices, including as to pricing policies and

18  mandates; responses to foreign governments' or tribunals' mandates or orders regarding IAP and app

19  distribution; the annual fee charged to iOS developers (and any other such fees); requirements to use

20  Apple distribution and IAP services, and the details thereof; materials regarding competition or the

21  lack thereof; Apple Arcade, iPadOS, watchOS, and iMessage apps or in-app products; Apple's App

22  Tracking Transparency program; governmental taxes or fees; Apple's review of apps and in-app

23  products and failures thereof, as well as scam or fraudulent or other bad apps or in-app products sold

24  in or via the App Store or in apps acquired therefrom; security breaches relating to iOS apps, in-app

25  products, and IAP; money laundering via the App Store or IAP; Mac-related app and in-app product

26  distribution, including Apple's notarization and Gatekeeper systems; and Apple's competition with

27  iOS developers, among related and other matters raised in Plaintiffs' Complaint.

28

1    Further, Plaintiffs anticipate taking depositions of the Defendant, present and former

2    representatives, and non-parties regarding the above and related topics, and other topics pertinent to

3    their claims and the Defendant's defenses, as they pertain to this matter. These may include depositions

4    of witnesses deposed previously by plaintiffs or others in the *Cameron* and related consumer and *Epic*

5    *Games* cases.

6         **2.    Apple's statement**

7         It is Apple's position that no discovery should proceed in this matter unless and until the Court

8    issues a ruling allowing Plaintiffs' claims to proceed in whole or part. If the Court grants Plaintiffs

9    leave to further amend their complaint, then discovery should not commence unless and until the Court

10   issues a ruling allowing Plaintiffs' amended claims to proceed in whole or part.

11        Apple has already expended massive resources litigating *Cameron*, a nearly identical—and

12   now settled—case. Given the "enourmous expense of discovery," *Bell Atlantic Corp. v. Twombly*, 550

13   U.S. 544, 558 (2007), Apple should not be forced to bear the burden of additional discovery on claims

14   lodged years after they expired—and especially not before this Court considers whether to allow these

15   claims to proceed. *See also Reveal Chat Holdco, LLC v. Facebook, Inc.*, 2020 WL 2843369, at *4

16   (N.D. Cal. Apr. 10, 2020) (discovery in "antitrust cases . . . tends to be broad, time-consuming and

17   expensive" (citation omitted)). After years of sitting on their claims, Plaintiffs should not be permitted

18   to force Apple to engage in additional discovery prematurely.

19        Other circumstances of this case also warrant delaying discovery until Apple's Motion to

20   Dismiss is resolved (along with any future motions to dismiss any further iterations of the complaint).

21   As stated above, the primary difference between this action and *Cameron* is that this action is brought

22   on behalf of foreign developers and covers non-U.S. transactions, yet those transactions are barred by

23   the FTAIA. Apple's pending Motion to Dismiss under Federal Rules of Civil Procedure 12(b)(1) and

24   12(b)(6) addresses whether the FTAIA bars Plaintiffs' claims based on foreign sales, in addition to

25   raising several other deficiencies with Plaintiffs' Complaint, including its timeliness, Plaintiffs'

26   standing to challenge ATT, whether Plaintiffs have stated a claim challenging ATT, and GESTE's

27   standing to raise any claims. The Court can decide these issues as a matter of law. Commencing

28   discovery on the basis of this complaint—which Plaintiffs have previewed they will almost certainly

1   amend—at this juncture would impose substantial and unnecessary burdens on the Parties. Until the

2   Court decides that any of Plaintiffs' claims may move forward, discovery is premature.

3         That said, in light of Plaintiffs' position that discovery should begin on November 7, 2022,

4   Apple offered to provide (within seven days of entry of a protective order) access to transactional data

5   that was produced to the *Cameron* plaintiffs, as well as additional transactional data recently produced

6   to the *Pepper* plaintiffs. This offer was designed to balance Apple's concerns with expending

7   unnecessary resources on discovery if the case were to be dismissed and Plaintiffs' interest in data

8   potentially helpful in evalutating their claims and preparing a motion for class certification should the

9   case proceed. Plaintiffs declined Apple's offer.

10  **E.        Proposed limitations or modifications of the discovery rules**

11        **1.        Production of *Cameron* material**

12              **a.        Plaintiffs' statement**

13        As noted in Sec. VIII.D.1 above, Plaintiffs request production of, or other access to, all

14  discovery materials to which the *Cameron* plaintiffs had access in their case. Plaintiffs request that

15  such production be made, or access granted, within seven (7) days of entry into a protective order in

16  this matter. *See* Fed. R. Civ. P. 34(b)(2)(A) ("The party to whom the request is directed must respond

17  in writing within 30 days after being served . . . . *A shorter or longer time may be stipulated to under*

18  *Rule 29 or be ordered by the court*.") (emphasis added).

19              **b.        Apple's statement**

20        As stated above, Apple's position is that no discovery should proceed in this matter unless and

21  until the Court issues a ruling allowing Plaintiffs' claims to proceed in whole or part. If the Court

22  grants Plaintiffs leave to further amend their complaint, then discovery should not commence unless

23  and until the Court issues a rulling allowing Plaintiffs' amended claims to proceed in whole or part.

24  Apple does not object to making all discovery materials from *Cameron* available to Plaintiffs here,

25  pursuant to the discovery coordination order (*Pepper* ECF No. 194, ¶ 7), once discovery opens.

26

27

28

2. **Depositions**

a. **Plaintiffs' statement**

Plaintiffs' view is that relief from the limitation on the number of depositions set forth in Rule 30(a)(2) is necessary and appropriate. At present, and based on the experience of counsel in the *Cameron* matter, the Plaintiffs here request leave for each side to take up to 15 depositions in this matter—though more depositions may reasonably be needed as circumstances and factual and legal developments merit. Plaintiffs presently expect to depose a mix of Party and non-party witnesses. It is Plaintiffs' position is that discovery in this action may reasonably include depositions of witnesses previously deposed by plaintiffs or others in the *Cameron* and related consumer and *Epic Games* cases. Plaintiffs have explained their view to Apple that this is a different, subsequently filed case (and one that post-dates discovery undertaken in light of the coordination order entered in *Pepper* and *Cameron*), with its own issues, including, *e.g.*, Apple's defenses now explicitly raised in its motion to dismiss, as well as data which was not produced in *Cameron* and the related cases. Plaintiffs reserve rights to seek to modify the coordination order as necessary in their view, including in the event the Parties cannot reach agreement on a particular subject referenced in that order.

b. **Apple's statement**

This is not a typical case in which plaintiffs start with a blank slate on discovery. This is the *same* counsel challenging the *same* conduct of the *same* defendant as in *Cameron*. Plaintiffs come to this case with extensive institutional knowledge and will have access to the full discovery taken in the related cases. Thus, they should be able to proceed here with very targeted additional discovery— including with respect to depositions. Apple maintains that no witnesses deposed previously by the plaintiffs or others in *Cameron*, *Pepper*, or *Epic Games* may be deposed for this matter absent a compelling justification. The *Pepper* "protocols governing the coordination of discovery," to which this case is bound as a related case (*Pepper* ECF No. 194, ¶ 7), provide that "[w]itnesses should only be deposed once" (*id.* ¶ 3.) Apple maintains that any necessary, additional depositions should be limited in scope to any new issues presented by this action, and that it is too early to tell if any relief from Rule 30(a)(2) will be necessary.

1

     **3.**     **Document subpoenas to non-parties**

2

     The *Pepper* "protocols governing the coordination of discovery," to which this case is bound

3

as a related case (*Pepper* ECF No. 194, ¶ 7), prescribe certain procedures for conducting third-party

4

discovery. However, the Parties are discussing whether any modifications to those protocols would be

5

appropriate in this case. Each side reserves rights to move the Court to modify the reference protocols

6

if modification is deemed necessary by a side and agreement cannot be reached.

7

     **4.**     **Expert discovery**

8

     Because this case has been related to *Pepper*, it is "bound by [*Pepper*'s] . . . stipulation[]

9

regarding . . . expert discovery" entered as an order of the Court in *Pepper*. (*Pepper* ECF No. 194, ¶ 7.)

10

However, the Parties are discussing whether any modifications to that order would be appropriate in

11

this case. Each side reserves rights to move the Court to modify the expert order if modification is

12

deemed necessary by a side and agreement cannot be reached.

13

     **5.**     **Service**

14

     The Parties agree that service of any documents not filed via ECF, including pleadings,

15

discovery requests, subpoenas for testimony or documents, expert disclosure, and delivery of all

16

correspondence, whether under seal or otherwise, shall be sent by email to attorneys for the receiving

17

Party; the Parties will provide each other with service lists that can be used to serve documents. In the

18

event the volume of served materials is too large for email and requires electronic data transfer by file

19

transfer protocol or a similar technology, or overnight delivery, the serving Party will telephone or

20

email the other side's principal designee when the materials are sent to provide notice that the materials

21

are being served. For purposes of calculating discovery response times under the Federal Rules of Civil

22

Procedure, electronic delivery shall be treated the same as hand delivery.

23

     **6.**     **Authenticity presumptions**

24

     The Parties agree that documents produced by non-parties from the non-parties' files shall be

25

presumed to be authentic within the meaning of Fed. R. Evid. 901. Documents produced by Defendant

26

shall be presumed to be authentic within the meaning of Fed. R. Evid. 901. If a Party serves a specific

27

good-faith written objection to the authenticity of a document that it did not produce from its files, the

28

presumption of authenticity will no longer apply to that document. Any objection to a document's

authenticity must be provided with (or prior to) the exchange of objections to trial exhibits. The Parties will promptly meet and confer to attempt to resolve any objections. The Court will resolve any objections that are not resolved through this means or through the discovery process.

### 7. E-discovery order

Because this case has been related to *Pepper*, it is "bound by . . . the stipulation[] regarding ESI" entered as an order of the Court in *Pepper*. (*Pepper* ECF No. 194, ¶ 7.) However, the Parties are discussing whether any modifications to that ESI protocol would be appropriate in this case. Each side reserves rights to move the Court to modify the ESI protocol if modification is deemed necessary by a side and agreement cannot be reached.

### 8. Identified discovery disputes

At present, the Parties identify and report no discovery disputes, other than the disagreements regarding the timing and scope of discovery outlined above.

## IX.   CLASS ACTION

All attorneys of record for the Parties have reviewed the Procedural Guidance for Class Action Settlements.

### 1. Plaintiffs' statement

Plaintiffs propose that a class or classes be certified pursuant to Fed. R. Civ. P. 23(a), 23(b)(1), 23(b)(2), and 23(b)(3), or some combination thereof. They propose to file a motion for class certification pursuant to their proposed schedule as set forth in Exhibit A hereto, though they reserve the right to ask the Court to modify the schedule for their motion (and otherwise) depending on developments in the case, including with respect to discovery.

**2.      Apple's statement**

Apple disputes that Plaintiffs may obtain class certification pursuant to Rule 23 of the Federal Rules of Civil Procedure 23, or that Plaintiffs may establish a classwide basis for awarding monetary or equitable relief.

## X.      RELATED CASES

As noted herein, the Court related the instant matter to the *Pepper* and *Epic Games* cases on September 2, 2022. (ECF No. 28.) The Parties are not aware of other related cases or proceedings pending before another judge of this Court, or before another court or administrative body.

## XI.      RELIEF

**1.      Plaintiffs' statement**

Plaintiffs, on their own behalf, and on behalf of the proposed classes, seek all appropriate relief, to include, but not be limited to, injunctive relief; declaratory relief; monetary relief, whether by way of restitution or damages, including treble damages, or other multiple or punitive damages, or restitution, where mandated by law or equity or as otherwise available; together with recovery of their costs of suit, including their reasonable attorneys' fees, costs, expenses (including expert witness fees), and pre- and post-judgment interest to the maximum extent available at law or equity. Plaintiffs' requests for relief are more fully set forth in their Complaint.

**2.      Apple's statement**

Apple disputes that Plaintiffs are entitled to any relief, or that Plaintiffs can establish a classwide basis for awarding monetary or equitable relief. Apple reserves all of its defenses to individualized remedies (assuming Plaintiffs are able to establish liability, which Apple vigorously contests).

## XII.     SETTLEMENT AND ADR

No settlement discussions in this matter have taken place to-date. The Parties have discussed ADR generally; their ADR options; and they have filed their ADR certifications in each case. The Parties elect private mediation before a mutually agreeable third party, but believe that it is premature to select any deadlines or processes. They anticipate that settlement discussions may be appropriate

following dispositive motions practice or class certification proceedings; following substantial production in response to discovery requests; or at other times to be determined as the matter proceeds.

## XIII.   CONSENT TO MAGISTRATE JUDGE FOR ALL PURPOSES

The Parties respectfully decline assignment to a magistrate judge for all further proceedings.

## XIV.   OTHER REFERENCES

The Parties agree that this case is not suitable for reference to binding arbitration and/or to a special master.

## XV.   NARROWING OF ISSUES

On October 28, 2022, Apple filed a Motion to Dismiss the Complaint in full or in part. (ECF No. 41.) Otherwise, the Parties agree it is too early to identify potential ways to expedite the presentation of evidence at trial or otherwise narrow this matter by agreement or motion. No Party has requested bifurcation of issues, claims, or defenses.

## XVI.   EXPEDITED TRIAL PROCEDURE

The Parties agree that this case is not suitable for handling under the Expedited Trial Procedure of General Order No. 64.

## XVII.  SCHEDULING

Plaintiffs and Apple have negotiated and reached agreement where they could, with certain unresolved disputes, on a case schedule. The proposals and remaining disputes are set forth in the attached Exhibit A. After discussion and rulings or modifications made by the Court at the Case Management Conference scheduled for November 7, 2022, the Parties will submit a proposed case-schedule order to the Court for entry.

The Parties reserve the right to ask for modifications to any schedule ordered by the Court, as circumstances and case events warrant.

## XVIII. TRIAL

Plaintiffs have demanded a jury trial and presently expect the trial to last 10 Court days. It is Apple's position that if a trial is necessary, this action is conducive to resolution through a bench trial. Apple believes that it is premature to estimate the length of trial before any discovery has been taken.

## XIX.   DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS

### 1.   Plaintiffs' statement

Plaintiffs have filed their Certifications of Interested Entities or Persons. (ECF Nos. 32-34.) Pursuant to Fed. R. Civ. P. 7.1(a), Figaro has reported that its parent entity is Groupe Industriel Marcel Dassauland; L'Équipe has reported that its ultimate parent entity is Les Editions P. Amaury SA; and Le GESTE has reported that it has no parent corporation, and no publicly held corporation owns 10% or more of its stock.

Further, pursuant to Civil L.R. 3-15, Figaro and L'Équipe, respectively, have advised that the following listed persons, associations of persons, etc., (i) have a financial interest in the subject matter in controversy or in a party to the proceeding, or (ii) have a non-financial interest in that subject matter or in a party that could be substantially affected by the outcome of this proceeding: Figaro: Groupe Industriel Marcel Dassault (parent entity with financial interest); L'Équipe: Les Editions P. Amaury SA (parent entity with financial interest). Le GESTE has advised that it has no such entity to report.

### 2.   Defendant's statement

Defendant has filed its Certification of Interested Entities or Persons. (ECF No. 35.) Pursuant to Civil L.R. 3-15, the undersigned certifies that other than the named parties, there is no such interest to report.

## XX.   PROFESSIONAL CONDUCT

The Parties confirm that all attorneys of record for the Parties have reviewed the Guidelines for Professional Conduct for the Northern District of California.

## XXI.   OTHER

### 1.   Plaintiffs' statement

In the Plaintiffs' view, complex antitrust class actions such as this one present special case management issues, in particular the efficient and timely completion of discovery. Given the issues likely to arise in the course of litigating this matter, Plaintiffs believe that these actions would benefit from quarterly status conferences in person, telephone conference, or video conference on dates and at times convenient for the Court. *See* Manual for Complex Litigation, Fourth §11.22 (2004).

To the extent status conferences are held quarterly or at other intervals, Plaintiffs propose that the Parties jointly file a Further Status Conference Report seven days in advance of the status conference setting forth what issues, if any, there are for discussion with or resolution by the Court.

### 2.    Defendant's statement

Apple defers to the Court's determination regarding scheduling of future status conferences and will work with Plaintiffs to file joint case management statements in advance of any such conference pursuant to the Court's local rules.

//

//

//

//

//

DATED: October 31, 2022                    Respectfully submitted,

HAGENS BERMAN SOBOL SHAPIRO LLP

By _____ */s/ Steve W. Berman*_____
    Steve W. Berman (*pro hac vice*)
Robert F. Lopez (*pro hac vice*)
Abigail D. Pershing (*pro hac vice*)
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com
robl@hbsslaw.com
abigailp@hbsslaw.com

Ben M. Harrington (SBN 313877)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
benh@hbsslaw.com

*Attorneys for Plaintiffs Société du Figaro, SAS;*
*L'Équipe 24/24 SAS; le GESTE; and the*
*Proposed Classes*

1

2      Dated:  October 31, 2022                 GIBSON, DUNN & CRUTCHER LLP

3                                               By:  */s/ Cynthia E. Richman*

4                                                   Cynthia E. Richman

5                                               Cynthia E. Richman (*pro hac vice*)
                                                Victoria C. Granda (pro hac vice)
6                                               GIBSON, DUNN & CRUTCHER LLP
                                                1050 Connecticut Avenue, N.W.
7                                               Washington, DC 20036-5306
                                                Telephone:  202.955.8500
8                                               Facsimile:  202.467.0539
                                                crichman@gibsondunn.com
9                                               vgranda@gibsondunn.com

10                                              Daniel G. Swanson (SBN 116556)
                                                Dana Lynn Craig (SBN 9251865)
11                                              GIBSON, DUNN & CRUTCHER LLP
                                                333 South Grand Avenue
12                                              Los Angeles, CA 90071-3197
                                                Telephone:  213.229.7000
13                                              Facsimile:  213.229.7520
                                                dswanson@gibsondunn.com
14                                              dcraig@gibsondunn.com

15                                              Caeli A. Higney (SBN 268644)
                                                Eli M. Lazarus (SBN 284082)
16                                              GIBSON, DUNN & CRUTCHER LLP
                                                555 Mission Street
17                                              San Francisco, CA 94105
                                                Telephone:  415.393.8200
18                                              Facsimile:  415.393.8306
                                                chigney@gibsondunn.com
19                                              elazarus@gibsondunn.com

20                                              *Attorneys for Defendant Apple Inc.*

21

22

23

24

25

26

27

28

JOINT CASE MANAGEMENT STATEMENT - 21
Case No.: 4:22-cv-04437-YGR

1

**ATTORNEY ATTESTATION**

2        I, Cynthia E. Richman, am the ECF user whose identification and password are being used to

3  file the foregoing document.  Pursuant to Civil Local Rule 5-1(h)(3) regarding signatures, I attest that

4  concurrence in the filing of this document has been obtained.

5  Dated: October 31, 2022

6

7                                        By:   /s/  Cynthia E. Richman

8                                        Cynthia E. Richman
                                         GIBSON, DUNN & CRUTCHER LLP
9                                        1050 Connecticut Avenue, N.W.
                                         Washington, DC 20036-5306
10                                       Telephone:  202.955.8500
                                         Facsimile:  202.467.0539
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

***DRAFT* EXHIBIT A**

| Deadline/Event | Plaintiffs' Proposal | Defendant's Proposal |
|---|---|---|
| Apple's Motion to Dismiss (or Answer) Plaintiffs' Complaint | October 28, 2022 | same |
| Commencement of Discovery | November 7, 2022 | After ruling on MTD (with exception that plaintiffs may request transactional data produced to-date in *Pepper*) |
| Apple re-produces/grants access to discovery materials available to *Cameron* plaintiffs | Within 7 (seven) days following entry of protective order in instant matter | After ruling on MTD (with exception that plaintiffs may request transactional data produced to-date in *Pepper*) |
| Exchange of Initial Disclosures | November 14, 2022 | Supplemental initial disclosures due after ruling on MTD |
| At their election, Plaintiffs file Amended Complaint in response to Apple's (a) Motion to Dismiss Complaint or (b) Answer to Complaint | December 2, 2022 | same |
| Plaintiffs' Opposition to Apple's Motion to Dismiss Complaint (if Plaintiffs opt to oppose rather than file Amended Complaint) | December 16, 2022 | same |
| Reply in support of Apple's Motion to Dismiss Complaint (assuming Plaintiffs do not file Amended Complaint in response thereto) | January 10, 2023 | same |
| Apple's Motion to Dismiss Plaintiffs' Amended Complaint | (if Amended Complaint filed on or before December 2, 2022) January 10, 2023 | Parties will meet and confer on an appropriate schedule when Amended Complaint is filed. |
| Hearing on Apple's Motion to Dismiss Plaintiffs' Complaint | To be determined by the Court | To be determined by the Court (Noticed for January 24, 2023) |
| Plaintiffs' Opposition to Apple's Motion to Dismiss Amended Complaint | February 28, 2023 | Parties will meet and confer on an appropriate schedule when Amended Complaint is filed |

| Deadline/Event | Plaintiffs' Proposal | Defendant's Proposal |
|---|---|---|
| Reply in support of Apple's Motion to Dismiss Amended Complaint | March 24, 2023 | Parties will meet and confer on an appropriate schedule when Amended Complaint is filed |
| Class Certification Motion and Supporting Expert Reports | December 15, 2023 | Parties will meet and confer on an appropriate schedule after ruling on MTD |
| Hearing on Defendant's Motion to Dismiss Plaintiffs' Amended Complaint | To be determined by the Court | To be determined by the Court |
| Class Certification Opposition and Supporting Expert Reports | February 13, 2024 | Parties will meet and confer on an appropriate schedule after ruling on MTD |
| Class Certification Reply and Reply Expert Reports | March 29, 2024 | Parties will meet and confer on an appropriate schedule after ruling on MTD |
| Hearing on Class Certification | To be determined by the Court | same |
| Discovery motions or letter briefs filed | As necessary, but Plaintiffs will endeavor to file any such motions or letter briefs at least 30 days prior to the closure dates for fact and expert discovery, based on the closure dates proposed by Plaintiffs | No deadline necessary |
| Deadline to complete fact discovery | 60 days after decision on class certification | same |
| Deadline to amend the pleadings | 60 days after decision on class certification | 35 days after decision on MTD |
| Parties' expert reports filed | 60 days after decision on class certification | same |
| Rebuttal expert reports filed | 45 days after submission of initial expert reports | same |
| Reply expert reports filed | 45 days after submission of rebuttal expert reports | same |
| Close of Expert Discovery | 45 days after submission of reply expert reports | same |
| Dispositive (S.J.) Motion(s) filed | 45 days after close of expert discovery | same |
| Opposition brief(s) filed | 45 days after opening brief is filed | same |
| Reply brief(s) filed | 30 days after opposition brief is filed | same |

EXHIBIT A - 2

| Deadline/Event | Plaintiffs' Proposal | Defendant's Proposal |
|---|---|---|
| Dispositive Motions (S.J.) Hearing | To be determined by the Court | same |
| Pretrial Conference | To be determined by the Court | same |
| Trial | To be determined by the Court | same |