Pages 1 - 24

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Thomas S. Hixson,
United States Magistrate Judge

SOCIETE DU FIGARO,                  )
                                    )
          Plaintiff,                )
                                    )
     vs.                            )     **Case No. 22-CV-04437-YGR**
                                    )
APPLE, INC.,                        )
                                    )
          Defendant.                )
_____)

San Francisco, California
Friday, January 13, 2023

**TRANSCRIPT OF REMOTE ZOOM VIDEOCONFERENCE PROCEEDINGS**

**APPEARANCES VIA ZOOM VIDEOCONFERENCE:**

For the Plaintiff:
                         HAGENS BERMAN SOBOL SHAPIRO LLP
                         715 Hearst Avenue, Suite 300
                         Berkeley, California 94710
                    **BY: ROBERT LOPEZ, ATTORNEY AT LAW**

For the Defendant:
                         GIBSON DUNN & CRUTCHER LLP
                         333 South Grand Avenue
                         Los Angeles, California 90071
                    **BY: ELI LAZARUS, ATTORNEY AT LAW**

TRANSCRIPTION SERVICE BY:    Dipti Patel, CET-997
                             Liberty Transcripts
                             7306 Danwood Drive
                             Austin, Texas 78759
                             (847) 848-4907

 1   <u>**Friday - January 13, 2023**</u>                    <u>**3:08 P.M.**</u>

 2                        **P R O C E E D I N G S**

 3                            ---OOO---

 4        **THE CLERK:**  All right.  Good afternoon, everyone.  We're

 5   here in Civil Action 22-4437, Societe du Figaro versus Apple,

 6   Inc.  The Honorable Thomas S. Hixson presiding.

 7        Counsel, please state your appearances for the record.

 8   Let's start with plaintiff's counsel.

 9        **MR. LOPEZ:**  Good afternoon, Your Honor.  Rob Lopez of Hagens

10   Berman for the plaintiffs.

11        **THE COURT:**  Good afternoon.

12        **MR. LAZARUS:**  Good afternoon, Your Honor.  Eli Lazarus of

13   Gibson Dunn for Apple, Inc.

14        **THE COURT:**  Good afternoon.

15        So I've got the parties' dispute, the proposed protective

16   order.  Let me ask Apple with respect to the data security

17   provisions, there are -- there have been, as you know, protective

18   orders in the related cases.

19        Have there been instances of security breaches or suspected

20   breaches that your proposals are response to or is this more of a

21   preventative nature?

22        **MR. LAZARUS:**  Thank you, Your Honor.

23        Our proposal is in response to the overarching threat of

24   data security breaches and, as we said in our papers, that threat

3

1   has grown significantly in the three years since the protective

2   orders were entered in the related cases.

3       At the same time, some particular facts have come to Apple's

4   attention that have informed our position, and I'm not at liberty

5   to say more about those in an open setting, but would be happy to

6   discuss in a closed session if it would be helpful to Your Honor.

7       **THE COURT:**  Let me think abut that.

8       But it sounds like the larger impetus is more general

9   concerns about hacking.  Is that right?

10      **MR. LAZARUS:**  That is correct, Your Honor, that we are

11  concerned about the, as I say, the overarching danger of hacking

12  which is an immediate and serious concern and it has grown worse

13  in recent years.

14      We think that in this case specifically, it would be

15  appropriate to enter data security provisions in part because we

16  know that Apple and the plaintiffs have agreed that Apple will

17  produce what was produced in the related cases, and we know that

18  there were sensitive documents and data produced there.

19      **THE COURT:**  Okay.  Are there things that you want to tell me

20  and arguments you would like to make that you think I should

21  consider before ruling on this issue but you feel constrained

22  from mentioning them in a public proceeding because we can move

23  to a Zoom meeting that would just be us?

24      **MR. LAZARUS:**  I think that that would be helpful, Your

25  Honor, to provide more context.

4

1      I think that -- I will say that it is Apple's position that

2  data security provisions like these we think should be entered in

3  all cases where sensitive information is produced.  And we have

4  begun a process of outreach to the Attorneys Advisory Committee

5  on the Local Rules to explore how to make that proposal that the

6  model order include these.

7      But, yes, I think that it would be helpful to discuss in a

8  closed setting.

9      **THE COURT:**  Okay.  Then I will do that.

10     But, first, let's address the other things that can be

11  addressed publicly.

12     One of the things that Apple proposed is that the parties

13  shall implement encryption of all protected materials in transit.

14  What does transit mean?

15     **MR. LAZARUS:**  Thank you, Your Honor.

16     Transit refers to when the data, for example, when a lawyer

17  is looking at data from -- that is transmitted from an e-

18  discovery vendor.  When that data is transmitted to the

19  attorney's office for download, it would be encrypted in that

20  transfer.

21     **THE COURT:**  Can you explain that again and what's going

22  where?  You have the data is at the document vendor.  And then

23  what was the transit to the counsel?

24     **MR. LAZARUS:**  Yes, Your Honor.

25     So I guess to back up, data or documents would be produced

5

1  by a party to another party and then transferred by that

2  receiving party to its vendor.  The vendor may hold the data and

3  then may transfer some of it back to the counsel for review.

4       That would be -- the data would be encrypted during those

5  transfers and, again, you know, when transferred from the data

6  vendor to an expert's office.  In all of those transfers, the

7  data should be encrypted.

8       **THE COURT:**  To me the word "transit" implies physical

9  movement, but now you're using the word "transfer" which for

10 electronic files to me does not imply physical movement.

11      **MR. LAZARUS:**  I think that certainly when in physical

12 transit if data is downloaded to a, for example, a hard drive and

13 transferred that way, it would be -- certainly, encryption would

14 be appropriate there.

15      I don't think that we intended a distinction between

16 physical and electronic transfer.

17      **THE COURT:**  You intended to include both electronic and

18 physical?

19      **MR. LAZARUS:**  Yes, Your Honor.

20      When data is being transferred from one location to another,

21 we do believe that encryption is appropriate.

22      **THE COURT:**  Suppose one Hagens Berman attorney is working at

23 home, and she says, oh, I am preparing for a deposition, look at

24 this hot dog.  And it's something Apple says you need a

25 confidential, and she emails it to her colleagues at Hagens

1   Berman also working on this case.

2       Does that attachment have to be encrypted?

3       **MR. LAZARUS:**  I believe that it -- it is a good question,

4   Your Honor.  And I think that we would -- the best practice would

5   be to keep it in a secure location so that it is accessible by

6   each attorney.  And rather than attaching it to an email, it

7   would be appropriate for all of them to be logged in to a secure

8   system to view the document.

9       **THE COURT:**  Is that transit or is that not transit?

10      **MR. LAZARUS:**  I think that it would be transit.  The

11  transfer of a document from one attorney's computer to another, I

12  believe that would be transit.

13      **THE COURT:**  I see.

14      The idea that they would have to encrypt an email attachment

15  or an email it around within the firm's email system seems crazy

16  to me.  Have you operated that way in other cases?

17      **MR. LAZARUS:**  Your Honor, typically, we would keep -- if

18  there are confidential documents, we would keep them on a secure

19  system, a secure server and access them that way rather than

20  emailing them around.

21      That said, I think this is -- you know, this is an issue

22  that we have not discussed in depth with the plaintiffs, and I

23  think we could certainly discuss that further and come to --

24  hopefully come to some mutually agreeable practice.

25      **THE COURT:**  The thing I -- I initially thought it was that

1   transit meant something physical.  And I thought that was bad

2   enough because presumably if a Hagens Berman attorney is going to

3   a deposition or a court hearing, she might have locally saved

4   documents on her computer and then presumably she would have to

5   encrypt them all before getting on the plane.  But since you

6   think that (indiscernible) also means every electronic transfer,

7   I mean wow.

8        And then you've also required multi-factor authentication

9   for any access to protected materials.  Does this  mean that when

10  a Hagens Berman attorney is in the office sitting at her desk and

11  she logs in, password protection is not sufficient?

12      **MR. LAZARUS:**  That's correct, Your Honor, but I would say

13  that the multi-factor authentication is extremely important to

14  security.

15      But in the example that you just gave, it would not be the

16  case that the attorney would need to enter a password and

17  necessarily enter some other code or something.  It may be enough

18  that since she is in her office on if she's on a recognized

19  device, that would qualify as multi-factor authentication.

20      Multi-factor authentication can be any -- authentication

21  with any two or more factors from among something you know like a

22  password, something you have like a trusted computer, or

23  something you are like a fingerprint.

24      So there wouldn't necessarily need to be more than a

25  password if the attorney is logging in on a recognized device.

1    **THE COURT:**  I would think that that (indiscernible)

2  protection would not qualify as multi-factor even on a recognized

3  device because you don't know who's entering that password.  It

4  could be anybody.

5    **MR. LAZARUS:**  That is true, Your Honor.

6    But the multi-factor authentication, again, would be

7  satisfied with a password and a trusted device.  So a hacker

8  halfway around the world who has discovered the person's password

9  could not log in to the system because they do not have that

10  trusted device.

11    **THE COURT:**  I see.

12    What if draft motions for summary judgment, quote, Apple's

13  protected materials, do all the drafts have to be encrypted when

14  the emails -- attorneys email them to each other?

15    **MR. LAZARUS:**  I'm sorry.  I couldn't quite hear that.

16    **THE COURT:**  Sure.  What about a draft motion that quotes

17  extensively from Apple's protected materials?  Do the attorneys

18  at Hagens Berman have to encrypt their draft Word documents

19  because they contain protected materials if they're going to

20  email them to each other?

21    **MR. LAZARUS:**  Again, that is not an issue that we have

22  discussed with plaintiffs.  And it may be that -- I would need,

23  Your Honor, to confer with my client on that.  I don't know

24  whether we would take the position that those files need to be

25  encrypted for that purpose.

9

1      **THE COURT:**  All righty.

2      Mr. Lopez, you've been very patient.  Anything that you

3  would like to speak to?

4      **MR. LOPEZ:**  Yes, Your Honor.

5      So, first of all, this is the first time we've heard of any

6  specific driver for this proposal from Apple, so -- and I

7  understand the Court may take a (indiscernible) --

8      **THE COURT:**  Sorry, your -- you got very quiet, and I didn't

9  know if it's your fault or mine.  But if you could up the volume,

10  that would be appreciated.

11      **MR. LOPEZ:**  Yes.  Can you hear me now?

12      **THE COURT:**  I can.  Thank you.

13      **MR. LOPEZ:**  Great, Your Honor.  Sorry about that.

14      So this is the first that we've heard of any specific driver

15  for this data security provision from Apple.  So I just wanted to

16  let the Court know that on the record before we do go into closed

17  session.  It's something we haven't heard of and something we

18  haven't had a chance to assess whatever it is that Mr. Lazarus is

19  going to say.

20      And I think it's no small matter and no just matter of a

21  rule being a rule that Apple hasn't met its burden here.  It's

22  cited to no cases justifying these very sweeping what I'd call

23  broke new dat security provisions with no definitions of key

24  terms, terms that could actually render systems more insecure

25  insofar as they call for the provision upon request of data

1  vulnerabilities, of security plans, and that sort of thing.

2      What I will say is this protective order that's in place now

3  is of course a function of the Court's model order.  It was

4  modified by agreement after much discussion.  It's perfectly

5  suitable here.  It served the parties very well.

6      And I think to the extent that Apple wants to vary this to

7  the extent it does, Mr. Lazarus has already indicated that his

8  client is working on some outreach to some attorney committee to

9  do that.  And I think that's probably the appropriate thing if

10 they want to make this into some new program because you really

11 ought to have various stakeholders weighing in on this, the

12 plaintiff's bar, the defense bar, experts on ESI.

13     I mean we've already seen with the Court's good questions

14 some confusion about what these terms may mean and how far they

15 should reach.  And to do this on two and a half pages with no

16 authority is really just uncalled for.

17     I will say one more thing, Your Honor, as well.  This

18 material that has already been produced in the Cameron action is

19 something that Apple has agreed it will comport at the case

20 management conference to allow us access to in this case.  And we

21 have agreed to use the same vendor that consumers are using now

22 under the consumer protective order that was also in place in the

23 Cameron matter.  So that material has already been produced.

24     As far as data goes, yes, Apple produced a good volume of

25 that to us, and Cameron has agreed to produce it to us again.

1  But as Mr. Lazarus will recall, we had a good working

2  relationship with them as we do now.  And they expressed security

3  concerns, and we addressed them to Apple's satisfaction.  And we

4  would certainly do that again here.

5      **THE COURT:**  Thank you.

6      Mr. Lazarus, the things that you want to tell me in a sealed

7  hearing, have you discussed those with Mr. Lopez so far?

8      **MR. LAZARUS:**  We have not.

9      **THE COURT:**  Okay.  In general, I want parties to meet and

10  confer with each other before they present things to me.  And in

11  response to a few of my questions, it doesn't seem to me that

12  Apple has really thought through what its data security

13  provisions would require, in particular, if transit means

14  electronic communications.

15      And then we have to worry about what about Word documents

16  that are stored in a document management system on plaintiff's

17  counsel's system and then different people access the Word

18  documents.  Encryption doesn't seem feasible, and it sounds like

19  Apple isn't quite sure if it were to actually want or insist on

20  that.

21      So here's my thought, and I'll ask (indiscernible) what you

22  think.  I'm ready to rule on the use restriction.  I'm ready to

23  rule on the disclosure requirement regarding data breaches.  I'm

24  ready to rule on the non-waiver as to manually (indiscernible)

25  material.  And I'm ready to rule on the destruction of materials.

1      My thought is that for the data security provisions, I'll

2  say I don't think the parties have met and conferred

3  sufficiently, and I don't think that Apple has thought through in

4  sufficient detail exactly what it would demand of the parties and

5  then tell the parties to go meet and confer about that further.

6      What are Apple's thoughts on my proceeding in that manner?

7      **MR. LAZARUS:**  Thank you, Your Honor.

8      That sounds very good to us.  We do think that, you know,

9  the standard laid down in Rule 26 is good cause, and we do think

10  that there is good cause for data security provisions here.

11      But, you know, if the plaintiffs do think that there's

12  something unclear, we do think that we should met and confer

13  about that rather than have the plaintiffs refuse the entire

14  collection of data security provisions.

15      And in response to Mr. Lopez's comment that it may be

16  appropriate to amend the model order, we certainly think that

17  that should happen.  But, at the same time, that should not be

18  mutually exclusive with entering an appropriate order in this

19  case.

20      So I'll stop there, but we certainly appreciate Your Honor's

21  proposal that we meet and confer further.

22      **THE COURT:**  And, Mr. Lopez, what do you think about my

23  proposal?

24      **MR. LOPEZ:**  Well, I think in the first instance, again,

25  Apple hasn't met its burden.  The case law is there, and Apple

hasn't even addressed it in its briefing, hasn't cited any
considered law, any considered decisions for why these new really
onerous and kind of broke provisions ought to come into play
here.

And, again, I think that's no small matter because without
citations to authority, we haven't been able to respond.  And I
think these are very far and wide-reaching proposal that it's
making that again paradoxically could lead to less security all
the way around if we need to be disclosing the details of various
undertakings we've taken even within our own office which is the
way this is written in great detail in some written form to our
opposition.

I mean the more you proliferate that sort of information,
the more vulnerable you make yourself when people actually know
what very specific provisions you've taken for data security.

So I think it's --

**THE COURT:**  I'll stop you right there because I agree with
you about that.  The idea that the Hagens Berman law firm would
have to disclose the full details of its IT security steps to a
litigation opponent, I do think that introduces real risk.  And
so I think Apple needs to take that into account.

Requiring document vendors to do something I think is quite
different from requiring the law firm representing their
opponents to disclose things.  Of course, plaintiff's counsel
should have adequate security measures, but I do get concerned

1    about -- because the Hagens Berman law firm represents many

2    different parties and many different cases.

3         And having them, forcing them to turn over all the

4    information about how their firm's systems are protected, I get a

5    little queasy at the thought of it.  That makes me nervous.

6         So all right.  But, Mr. Lopez, continue.  I didn't mean to

7    interrupt.

8         **MR. LOPEZ:**  Yeah.  Thank you, Your Honor.

9         **THE COURT:**  I did mean to interrupt you to say I agree with

10   you, but please continue.

11        **MR. LOPEZ:**  Thank you, Your Honor.

12        The other thing is the Court just referenced this plan that

13   Apple's proposal references.  And I'd just point out that in

14   everything it submitted to the Court, I don't believe there's an

15   instance where it requires a law firm to put that sort of

16   detailed plan into a certain publication or into a certain

17   writing that then could be available to the other side.

18        Again, these other things that Apple cites to which are

19   agreed provisions or something from the Sedona conference, which

20   by the way this really angular publication it cites to was

21   published in 2017 well before it entered into the Cameron

22   consumer protective order that was worked out and it's been

23   serving everybody well.  It doesn't require that of law firms.

24        So, again, what I think beyond what's happened here if Apple

25   gets the Court to rule on this proposal and all of a sudden now

1  has an order that it can use and cite to it in other cases, I

2  just think it's going to lead to this proliferation of ill-

3  considered decisions because there hasn't been enough input from

4  experts from various players in it.

5      The last thing I'll say, Your Honor, about the Court's plan,

6  which I understand where the Court is coming from on that, is we

7  haven't discussed timing here.  And the situation here is that

8  Apple has indicated that it's going to allow us access to this

9  new material.  Meanwhile, the clock is ticking.  Apple has moved

10  to dismiss once.  We told the Court that we were going to amend

11  in lieu of responding, so we did that on December 2nd.

12      The parties didn't have access to the transcript from the

13  case management conference when they filed their letter brief

14  here.  That didn't become available until January 3rd.  But we

15  have it; the parties do now.  And on the last page, the Court

16  indicates that the Court wanted us to have access to the material

17  form in the complaint and also for our opposition to Apple's

18  forthcoming motion to dismiss the amended complaint.

19      So we didn't have access to material when we filed our

20  amended complaint on December 2nd.  And I fear that the longer we

21  draw this out when we have a perfectly good protective order

22  already in place, it means we're going to be prejudiced more

23  because we're not going to have that material which Apple says

24  already in its view is responsive in part with some of the

25  arguments it's made in its motion to dismiss.

1        And, again, Judge Gonzalez Rogers wanted us to have access

2    to that material so we could do that.  And I would just refer the

3    Court to the transcript of the CMC, the last two or three pages

4    (indiscernible).

5        **THE COURT:**  This is all leading up to a question from me to

6    you which is when do you need to have all this protective order

7    stuff resolved so I've entered a final protective order so that

8    you get the material?

9        **MR. LOPEZ:**  As soon as possible.  Again, the material is --

10       **THE COURT:**  No, but I need a date.

11       **MR. LOPEZ:**  Yesterday, Your Honor.  I mean, seriously, the

12   Court --

13       **THE COURT:**  Well, that's not very helpful.

14       **MR. LOPEZ:**  Well, I don't mean it -- I mean it to be helpful

15   because the Court itself referenced the amended complaint which

16   the deadline passed.  And then our response to Apple's motion to

17   dismiss, Apple will file that on the 20th, I believe, of this

18   month, next Friday.  Then our opposition is due February 10th.

19       **THE COURT:**  So Apple's going to file it on --

20       **MR. LOPEZ:**  On January 20th.

21       **THE COURT:**  January 20th.  And then -- well, since you've

22   already filed the amended complaint without access to the

23   materials, that can't really be undone.  But it seems to me that,

24   okay, the answer to my question is January 20th because the

25   moment Apple gets that motion on file, you need to be able to

1  review the material to oppose.

2      So my order probably isn't going to go out until Tuesday.

3  But I think the parties should start meeting and conferring about

4  data security stuff immediately and then file a further joint

5  discovery letter brief, I'll put this in my order, by January

6  19th with competing protective orders.  And then, let's -- let me

7  look at my calendar for January 20th.

8      I'll schedule a further hearing for January 20th at 3 p.m.,

9  and I'll get an order out that day.  And that way plaintiffs can

10  have access to the materials in order to oppose Apple's motion.

11      Any further comments, Mr. Lopez?

12      **MR. LOPEZ:**  No.  I mean I think I understand what the Court

13  is saying.  I mean I hope we get a commitment from Apple that

14  once the order issues, we're going to immediately have access to

15  that material that's been there because I know with respect to

16  the data portion, it had said it would do that seven days after

17  entry of the protective order.

18      So there shouldn't be that issue here with regard to

19  documents because they're already in the database that it's

20  simply a matter of saying, all right, you have our permission to

21  go look at that material.

22      **THE COURT:**  That's my understanding is that for at least the

23  initial documents nothing is actually going to move because it's

24  already in the database.  Plaintiff's counsel would just look at

25  it.

1          But let me ask Apple, once I enter the protective order,

2     will you then immediately say, yes, you can look at it for the

3     purpose of this case?

4          **MR. LAZARUS:**  Thank you, Your Honor.

5          We are prepared to say that except for certain third-party

6     confidentiality issues.  We have raised this in meet and confers

7     with the plaintiffs.  It may be necessary for the vendor to allow

8     access to plaintiffs to all the documents other than a very few

9     that have some third-party confidentiality issues.

10         **THE COURT:**  Does that raise an issue for you, Mr. Lopez?

11         **MR. LOPEZ:**  No.  As Mr. Lazarus has indicated, the parties

12    have talked about that issue, and we understand Apple's position.

13    And I think we'll need to work with Apple further to access those

14    materials.

15         **THE COURT:**  But, Mr. Lazarus, if I understand you correctly,

16    once I enter the protective order, then leaving aside third-party

17    confidentiality issues, Apple would then be prepared to

18    immediately tell plaintiffs in this case that they could have

19    access to Apple's materials.  Is that correct?

20         **MR. LAZARUS:**  Yes, Your Honor.

21         We would -- I think we would want to discuss with plaintiffs

22    and enter into a stipulation to that effect.  But, yes, we are

23    willing to and able to give plaintiffs access to the documents.

24    As Mr. Lopez says, they are held by a vendor that is working with

25    the consumer plaintiffs in the Pepper case.  So, yes, I do think

1    that that is workable.

2        **THE COURT:**  Okay.  Then I'll --

3        **MR. LAZARUS:**  (Indiscernible).

4        **THE COURT:**  Go ahead.

5        **MR. LAZARUS:**  I'm sorry.  If I may respond to just a few

6    points that Mr. Lopez made.

7        **THE COURT:**  Sure.

8        **MR. LAZARUS:**  So one thing that Mr. Lopez mentioned and Your

9    Honor mentioned, it is critical that there be security wherever

10   sensitive information goes.  And so when sensitive information is

11   held by a law firm and also a vendor, if one of them has a

12   security protocol in place that is effective and the other one

13   doesn't, then that one becomes the weak link and is the target

14   for attackers.

15       So we do think that it is imperative that the law firms have

16   adequate security programs.  At the same time, as Your Honor has

17   raised, you know, what does the word "transit" mean and what

18   exactly is required, we do not intend to make this an overly

19   burdensome, overly onerous system.  And so we are happy to meet

20   and confer with plaintiffs to make sure that it is not that.

21       And incidentally, in our meet and confers, we would be happy

22   to involve an ESI expert who can be a neutral expert on these

23   matters.  As Mr. Lopez said, it's important to have stakeholders

24   across the board give input on this.  So we think that that would

25   be useful.

1          I would say that, you know, the assertion that we have a

2    perfectly good protective order in the related cases is not

3    logically -- doesn't hold water.  That it's akin to saying the

4    fact that we weren't robbed last night means we should leave the

5    door unlocked tonight.

6          These data breaches are happening.  I don't know if Your

7    Honor has seen in the legal press that just five days after we

8    entered our joint discovery letter here, the discovery vendor,

9    Ricoh, that's R-I-C-O-H, was hit with a data breach.  This is

10   happening right now, and the protective order should be adequate

11   to address it.

12         So I will leave it there for now in the open session.

13         **MR. LOPEZ:**  One quick response, Your Honor, if I could?

14         **THE COURT:**  Yes.

15         **MR. LOPEZ:**  So this -- what Mr. Lazarus has said is really

16   conflating the underlying data security issue with the form of

17   this protective order, which again the latter of which is

18   something that's been used over and over again as the basis for

19   very good workable protective orders in the high-tech district

20   and all of the United States.

21         And the second thing I'd say is, as Mr. Lazarus knows, we've

22   already provided assurances to Apple during our meet and confers

23   with regard to our firm security and with regard to vendor

24   security.  So there shouldn't be any sort of doubt on the record

25   that security isn't something, you know, again, that we take very

1    seriously because we do.  And so does the vendor we've chosen.

2         And, again, Apple isn't alleging anything to the contrary.

3    It's not pointing to any sort of data breach with respect to the

4    vendor in use currently nor with regard to our firm.  So I just

5    want to make that very clear for the record.

6         **THE COURT:**  All right.  Thank you.  I appreciate your

7    comments.

8         In case it wasn't clear, I've decided against having a

9    closed session today because Mr. Lazarus indicated that the

10   things he would like to discuss in the closed session he has not

11   discussed with you, Mr. Lopez.  And I want Apple to discuss those

12   with plaintiff's counsel before presenting them to me because

13   that's the only way to have a meaningful meet and confer.

14        **MR. LAZARUS:**  Your Honor, I understand that.  The

15   difficulty, though, and part of the reason that we have not

16   disclosed that information is that we don't have a protective

17   order here.  And we would feel comfortable disclosing this

18   information in a sealed court session.

19        I suppose if we're going to be disclosing it outside of

20   court to the plaintiffs, I don't know if it would make sense for

21   the Court to order the plaintiffs not to disclose that otherwise

22   or to keep it confidential if that would make sense.

23        **THE COURT:**  No, I'm not going to do that.  If there's

24   something that you can't even tell to the plaintiff's counsel,

25   then I'm beginning to wonder how relevant it is.  There needs to

22

1    be something -- what I would expect that would be relevant which

2    for you to flag some security issues that you thought arose in

3    the related cases, not things unrelated to these cases.

4         So, anyway, but I -- and then there's no reason why you

5    can't get on a phone call with the other side and say, hey, can

6    we agree that this information is going to stay confidential.

7    You can do that if there's something appropriate you want to

8    raise with them.

9         Anyway, we've gone on long enough.  So I am going to issue

10   an order likely on Tuesday.  I'm going to rule on the use

11   restriction.  I'm going to rule on the disclosure of information

12   regarding data breaches.  I'm going to rule on the non-waiver as

13   to manually review the material.  I'm going to rule on the

14   destruction of materials.

15        And then I'm going to direct the parties to meet and confer

16   about data security provisions.  The principal reason for doing

17   this is that as soon as I started asking Apple some specific

18   questions about what exactly its proposal meant, Apple didn't

19   have very good answers and in some cases just said it wasn't

20   quite sure.

21        So I don't really know what Apple's proposing, and I'm not

22   sure Apple knows it either.  And that also means that plaintiffs

23   hadn't had the opportunity to consider it.  And I would like this

24   dispute to be considered before it comes to me.

25        This meet and confer is going to have to happen quickly,

23

1    though, because plaintiffs raise a very good point about how

2    they're going to need to have access to Apple's information

3    pretty soon.  So, again, the order that comes out on Tuesday is

4    going to require a joint discovery letter brief following meet

5    and confer on January 19th with competing protective orders.

6        So please get cracking on your meet and confer because you

7    only have a few days to do it.  And then we'll come back on

8    January 20th at 3 p.m. for our follow up hearing.

9        Anything further, Mr. Lopez, that we need to address at

10   today's hearing?

11       **MR. LOPEZ:**  The Court just indicated now that it intends to

12   rule on the manual review on Rule 502-type issue.  Does the Court

13   want to hear anything further on that before?

14       **THE COURT:**  I don't.  I thought everything else was very

15   straightforward in the letter brief, so thank you to the parties

16   for briefing that.

17       Anything further, Mr. Lazarus, that you feel the need to

18   address?

19       **MR. LAZARUS:**  No.  Thank you, Your Honor.

20       **THE COURT:**  All right.  Thank you, counsel.  The matter is

21   taken under submission.  Have a good weekend.

22       **MR. LOPEZ:**  Thank you, Your Honor.  You too

23       **THE CLERK:**  Thank you everyone.  We're off the record in

24   this matter.

25       (Proceedings adjourned at 3:46 p.m.)

24

1                              ---oOo---

2

3                    **C E R T I F I C A T E**

4        I, DIPTI PATEL, court-approved transcriber, certify that the

5    foregoing is a correct transcript from the official electronic

6    sound recording of the proceedings in the above-entitled matter.

7

8    *Dipti Patel*

9    _____

10   DIPTI PATEL, CET-997

11   LIBERTY TRANSCRIPTS              Date: January 18, 2023

12

13

14

15

16

17

18

19

20

21

22

23

24

25