CYNTHIA E. RICHMAN (D.C. Bar No. 492089; *pro hac vice*)
  crichman@gibsondunn.com
VICTORIA C. GRANDA (D.C. Bar No. 1673034; *pro hac vice*)
  vgranda@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone: 202.955.8500
Facsimile: 202.467.0539

DANIEL G. SWANSON (SBN 116556)
  dswanson@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: 213.229.7000
Facsimile: 213.229.7520

CAELI A. HIGNEY (SBN 268644)
  chigney@gibsondunn.com
DANA LYNN CRAIG (SBN 251865)
  dcraig@gibsondunn.com
ELI M. LAZARUS (SBN 284082)
  elazarus@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street
San Francisco, CA 94105
Telephone: 415.393.8200
Facsimile: 415.393.8306

*Attorneys for defendant Apple Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| SOCIÉTÉ DU FIGARO, SAS, a French simplified joint-stock company; L'ÉQUIPE 24/24 SAS, a French simplified joint-stock company, on behalf of themselves and all others similarly situated; and LE GESTE, a French association, on behalf of itself, its members, and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>APPLE INC., a California corporation,<br><br>Defendant. | CASE NO. 4:22-cv-04437-YGR<br><br>**DEFENDANT APPLE INC.'S SUPPLEMENTAL BRIEF IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**<br><br>**Hearing:**<br>Date:    July 11, 2023<br>Time:    2:00 p.m.<br>Place:   Courtroom 1<br>Judge:  Hon. Yvonne Gonzalez Rogers |

In support of its Motion to Dismiss ("Motion"), Dkt. 61, Apple Inc. ("Apple") respectfully submits this supplemental brief pursuant to the Court's August 24, 2023 Order, Dkt. 81, which directed the parties to address the recent decision under California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*, in *California Medical Association v. Aetna Health of California Inc.*, 14 Cal. 5th 1075, 532 P.3d 250 (2023) ("*CMA*"). The decision supports dismissal. First, *CMA* confirms that plaintiff le GESTE's claim brought on behalf of its members should be dismissed because the UCL bars associational standing. *See* Dkt. 61 at 21. Second, *CMA* does not support—or even implicate—Article III standing for le GESTE's UCL claim allegedly brought on its own behalf because it is a decision regarding statutory interpretation under state law. Third, *CMA* does not support le GESTE's UCL standing either, because le GESTE has alleged only a manufactured direct injury.

In *CMA*, the California Medical Association ("CMA"), a professional association of physicians founded in 1856, brought a UCL claim against insurance provider Aetna Health of California Inc. In 2009, Aetna had instituted a change to its policies regarding out-of-network referrals that CMA believed interfered with physicians' exercise of their independent medical judgment and thereby threatened CMA's core mission to protect the public health and better the medical profession. 532 P.3d at 255. Starting a full two years before bringing UCL litigation, CMA prepared a guide on how to address and counteract the policy, engaged with Aetna and physicians about means to address the policy without litigation, and prepared a letter to regulators requesting that they take action. *Id.* at 255-56. In filing suit in 2012, CMA alleged that Aetna's 2009 policy change directly injured CMA by causing it to divert resources away from core mission-driven work. *Id.* at 256. There was no dispute that CMA had statutory standing under the UCL "*only* if CMA had individually suffered injury in fact and lost money or property; injury to CMA's members did not suffice." *Id.* at 423 (emphasis added). The Court reiterated its holding from *Amalgamated Transit Union, Local 1756, AFL-CIO v. Superior Court*, 46 Cal. 4th 993, 1003-05 (2009), that associational standing based on member injury is unavailable under the UCL. *Id.* at 254. It held that an organization can individually satisfy the UCL's injury and causation requirements when, "in furtherance of a bona fide, preexisting mission, [it] incurs costs to respond to perceived unfair competition that threatens that mission," so long as these costs are "independent of costs incurred in UCL litigation or preparations for such litigation." *Id.* at 254-55.

As *CMA* reaffirmed, alleged injury to le GESTE's members cannot create statutory standing under the UCL.  A "membership organization . . . may not base standing to sue on injuries to its members, but only on those to the organization itself."  532 P.3d at 254.  Le GESTE purports to allege such organizational injury, but le GESTE does not allege an individual injury of a sort that satisfies (as it must) federal standards under Article III.  *See Lee v. Am. Nat. Ins. Co.*, 260 F.3d 997, 1001-02 (9th Cir. 2001) (regardless of whether a state-law claim could be brought in state court, in federal court a plaintiff must establish the requisite injury under Article III).

The bar to satisfy Article III is higher than the bar set for UCL standing in *CMA*.  Federal courts, including the Supreme Court, have consistently held that Article III requires non-voluntary injury.  *See, e.g.*, *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013) ("[R]espondents cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is certainly not impending."); *see also TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2214 (2021) (an "asserted informational injury that causes no adverse effects cannot satisfy Article III").  *CMA*, however, held that organizational standing could arise under the UCL even though "CMA's response to Aetna's policy [was] voluntary."  532 P.3d at 265.  The Court reached this conclusion based on California state law precedent regarding proximate causation.  *Id*. at 264-66.  The Court in fact noted that the UCL "did not borrow the traceability requirement from federal standing law" and that while such law was "somewhat helpful," it was not binding.  *Id*. at 266 n.9.  *CMA*, a state law decision, thus cannot alter Constitutional standing requirements in a federal court such as this one.  Under federal law, a voluntary diversion of resources of the sort alleged by le GESTE is insufficient to support Article III standing.

Further, as explained in Apple's Motion, Dkt. 61 at 17, to satisfy Article III, an organization must establish "that it would have suffered some other injury if it had not diverted resources."  *La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1088 (9th Cir. 2010); *see also Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982) (challenged conduct must have "perceptibly impaired" organization's ability to provide core services; the alleged injury cannot be "simply a setback to the organization's abstract social interests"); *One Fair Wage, Inc. v. Darden Restaurants Inc.*, 2023 WL 5310559 at *5-8 (N.D. Cal. Aug. 17, 2023) (organization's voluntary

decision to divert resources did not satisfy Article III). Le GESTE identifies no injury that Apple's policies would have caused it to suffer had it not allegedly diverted resources to studying Apple's policies. *Cf. East Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 663 (9th Cir. 2021) (Article III satisfied where rule created obstacles for organizations by forcing them to send staff to the border to serve detained asylum seekers and to care for nonlegal needs of unaccompanied migrant children). Le GESTE's direct-injury claim thus cannot be heard in federal court.

Finally, le GESTE does not even satisfy the standards for UCL standing as expounded in *CMA*. The court there emphasized that CMA established that Aetna's out-of-network referral policy change threatened its mission to protect the public health *independently* of the threat to its mission to better its members (the medical profession). 532 P.3d at 261. But Apple's policies regarding app distribution and in-app payments in no way threaten le GESTE's mission to "advocate[] generally for competitive markets for online publishers." *See* FAC ¶ 62. And even if they affected le GESTE, that would only be because of some alleged effect on its purported developer members. Le GESTE's direct UCL claim, unlike CMA's, is a representational claim in disguise. Further, *CMA* held that "expenditures an organization makes . . . to prepare for [UCL] litigation, do not serve, for purposes of UCL standing, to establish an injury in fact." 532 P.3d at 266. Unlike the facts in *CMA*, le GESTE has not plausibly alleged that its investigation of Apple's policies was initiated long before the onset of litigation and close in time to the adoption of the policies in question. To the contrary, the Apple policies that le GESTE challenges were in place for a decade before it sued, and yet its supposed diverted resources arose in the "months before this suit was filed." FAC ¶ 63; *compare CMA*, 532 P.3d at 266 ("[CMA's] efforts were independent of this litigation, which was commenced approximately two years after CMA began responding to Aetna's policy."). An organization "cannot manufacture the injury by incurring litigation costs or simply choosing to spend money fixing a problem that otherwise would not affect the organization at all," *Trabajadores*, 624 F.3d at 1088, as le GESTE has done to try bring claims against Apple with regard to policies it doesn't like. Plaintiffs' conclusory allegations to the contrary should be ignored. Simply put, le GESTE has not suffered any injury caused by Apple's policies that would satisfy Article III or the UCL.

For all these reasons, the Court should dismiss le GESTE's UCL claim in full.

Gibson, Dunn & Crutcher LLP

3
APPLE'S SUPPLEMENTAL BRIEF IN SUPPORT OF ITS MOTION TO DISMISS AMENDED COMPLAINT
CASE NO 4:22-CV-04437-YGR

Dated: August 29, 2023

GIBSON, DUNN & CRUTCHER LLP
Daniel G. Swanson
Cynthia E. Richman
Caeli A. Higney
Dana Lynn Craig
Eli M. Lazarus
Victoria C. Granda

By: */s/ Cynthia E. Richman*

*Attorneys for defendant Apple Inc.*